# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

JOSEPH H.,

Plaintiff,

v.                                                      3:19-CV-587
                                                        (ATB)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

PETER A. GORTON, ESQ., for Plaintiff
NICOLE SONIA, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. Nos. 4, 6).

## I.     PROCEDURAL HISTORY

Plaintiff protectively filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 4, 2015, alleging disability beginning June 1, 2011. (Administrative Transcript ("T") 10, 159-72).  Plaintiff's application was denied initially on February 19, 2016. (T. 68-91).  Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Mary J. Leary on April 16, 2018. (T. 27-67).  The ALJ heard testimony from plaintiff and from vocational expert ("VE") Jacqueline Crawford-Apperson. (T. 33-65).  On June 6, 2018, the ALJ issued an order denying plaintiff's claim. (T. 7-26).  The ALJ's decision became the

Commissioner's final decision when the Appeals Council denied plaintiff's request for review on March 25, 2019. (T. 1-6).

## II.   **GENERALLY APPLICABLE LAW**

### A.   **Disability Standard**

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be hired
> if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work
> activities.  If the claimant suffers such an impairment, the third inquiry is
> whether, based solely on medical evidence, the claimant has an impairment
> which meets or equals the criteria of an impairment listed in Appendix 1 of
> the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering vocational

> factors such as age, education, and work experience . . . . Assuming the
> claimant does not have a listed impairment, the fourth inquiry is whether,
> despite the claimant's severe impairment, he has the residual functional
> capacity to perform his past work.  Finally, if the claimant is unable to
> perform his past work, the [Commissioner] then determines whether there
> is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.

Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of

review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from

both sides, because an analysis of the substantiality of the evidence must also include

that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d

255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its

interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id*. *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony). However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   <u>FACTS</u>

Plaintiff was forty-seven years old on the date of the administrative hearing. (T. 33). He lived alone, but had a twelve year old son that he visited on a regular basis. (T. 39-40). Plaintiff had attended an alternative high school due to difficulties with anxiety and concentration, but left in the tenth grade. (T. 35, 245). He subsequently entered a vocational training program and obtained a certificate in basic electrical work, but did not reach the level of apprentice or journeyman electrician. (T. 32, 35). Plaintiff's most recent employment was with a package delivery company, where his duties included driving, handling packages, and loading trucks. (T. 36, 177, 183). He worked with this company for approximately six years. (T. 36, 173-74). Plaintiff left this position in 2010, after injuring his back while lifting an overweight package. (T. 36-37, 173-74).

Since the injury, plaintiff experienced continued lower back pain that caused numbness and tingling in his lower extremities. (T. 46, 252). He testified that the pain

4

was aggravated by remaining in one position for too long, and that he had to take frequent breaks while washing dishes or doing other household chores. (T. 48).

Plaintiff reported anxiety and difficulties with attention and concentration that dated back to childhood, but had never been hospitalized for psychiatric reasons. (T. 245). He had been prescribed medication to help with his attention and focus for a number of years, but only began counseling and therapy sessions in September 2016. (T. 45, 245, 264-65). He testified that his social anxiety caused him to avoid crowds and public transportation. (T. 42, 49-50). He was able to go grocery shopping with assistance from family members. (T. 42). He testified that he watched television and used the internet on a regular basis, but that his concentration difficulties caused him to become frequently distracted during these activities. (T. 51-52).

The ALJ's decision provides a detailed statement of the medical and other evidence of record. (T. 12-19). Rather than reciting this evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff.

## IV.   **THE ALJ'S DECISION**

After reviewing the procedural history of the plaintiff's application and stating the applicable law, the ALJ found that plaintiff met the insured status requirements through June 30, 2016, and had not engaged in substantial gainful activity ("SGA") since the alleged onset date of June 1, 2011. (T. 12). At step two of the sequential evaluation, the ALJ found that plaintiff had the following severe impairments: major depressive disorder; social anxiety disorder; attention deficit disorder; degenerative disc disease;

5

asthma; and sacroilitis.[1] (T. 12-13).  At step three of the evaluation, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a Listed Impairment. (T. 13-15).

At step four, the ALJ found that plaintiff had the RFC to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (T. 15-21). Specifically, the ALJ found that plaintiff could only occasionally climb ramps, stairs, ladders, ropes, and scaffolds; could frequently balance; could occasionally stoop, kneel, crouch, and crawl; and must avoid concentrated exposure to respiratory irritants. (T. 15). She also found that plaintiff was able to understand, remember, and carry out simple instructions consistent with routine, repetitive, unskilled work at special vocational preparation ("SVP") levels 1 and 2.[2] (*Id.*)  The ALJ determined that plaintiff could tolerate occasional contact with co-workers and supervisors in a setting where plaintiff could complete tasks relatively independently, but that the job should not require contact with the general public. (*Id.*)  The ALJ also found that plaintiff could perform simple decision-making related to basic work functions, and could tolerate minor, infrequent changes within the workplace, but would likely be off-task five percent of the workday. (*Id.*)

In making the RFC determination, the ALJ stated that she considered all of the plaintiff's symptoms, and the extent to which those symptoms could "reasonably be

---

[1] Sacroilitis is an inflammation of the sacroiliac joints that connect the lower spine and pelvis, causing pain in the buttocks and lower back, that can extend to the groin, legs, and feet. https://www.mayoclinic.org /diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747

[2] SVP measures "[t]he amount of time required by a typical worker to: learn the techniques, acquire the information, and develop the facility needed for average performance of a job." 20 C.F.R. § 656.3.  An SVP level of 1 corresponds with "short demonstration only" and an SVP level of 2 corresponds with "anything beyond short demonstration up to and including one month." *Id.*

accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929" and Social Security Ruling ("SSR") 16-3p. (T. 15).  The ALJ further stated that she considered opinion evidence pursuant to 20 C.F.R. §§ 404.1527 and 416.927. (*Id*.)  The ALJ also found that plaintiff's medically determinable impairments could reasonably be expected to cause some of his alleged symptoms, but that plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (T. 16).

The ALJ then determined that plaintiff was unable to perform any past relevant work. (T. 20).  However, the ALJ evaluated the VE testimony, and found that "considering the [plaintiff']'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform." (T. 21).  Accordingly, the ALJ determined that plaintiff was not disabled. (T. 22).

## V.    ISSUES IN CONTENTION

Plaintiff raises two arguments:

1.    The ALJ improperly weighed the medical evidence and substituted her own judgment in place of the opinions of acceptable medical sources. (Plaintiff's Brief ("Pl.'s Br.") at 10-20) (Dkt. No. 10); (Plaintiff's Reply Brief ("Pl.'s Rep. Br.") at 1-5) (Dkt. No. 15).

2.    The ALJ's step five determination was not supported by substantial evidence. (Pl.'s Br. at 21).

The Commissioner contends that the ALJ's analysis of the medical evidence and her ultimate RFC determination were supported by substantial evidence. (Defendant's Brief

("Def.'s Br.") at 4-21) (Dkt. No. 12).  For the reasons stated below, this court concludes that the ALJ erred in evaluating the medical opinion evidence and finds that her RFC determination was not supported by substantial evidence.  As a result, the ALJ's analysis at step five, and the ultimate finding that plaintiff was not disabled, were tainted.  Accordingly, the court orders a remand for further administrative proceedings to properly assess the medical evidence related to plaintiff's impairments in connection with the Commissioner's RFC determination.

## DISCUSSION

## VI.   RFC/WEIGHT OF THE EVIDENCE/TREATING PHYSICIAN

### A.   Legal Standards

#### 1.   RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

## 2.   Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for

determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ."  *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  If an ALJ decides not to give the treating source's records controlling weight, then he or she must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019) (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)).  "[T]he ALJ must 'give good reasons in [its] notice of

10

determination or decision for the weight [it gives the] treating source's [medical] opinion.' " *Id.* at 96 (citing *Halloran v. Barnhart*, 362 F.3d at 32).  Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error.  *Id.*  It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed." *Id.*

### B.    Application

#### 1.    State Agency Consultant/Single Decision Maker

As discussed above, the ALJ determined that plaintiff could perform less than the full range of light work. (T. 15).  In reaching her RFC determination, the ALJ stated that she assigned "substantial weight" to a January 22, 2016 Mental RFC statement ("MRFC") purportedly prepared by Dr. Harding, a non-examining state medical consultant. (T. 17).  Plaintiff contends that the ALJ erred in her consideration of this MRFC.  This court agrees.

In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because such consultants are qualified experts in the field of social security disability.  *See Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Miller v. Comm'r of Soc. Sec.*, 13-CV-1388 (GLS), 2015 WL 1383816, at *8 (N.D.N.Y. Mar. 25, 2015) (both consultative examiner and non-examining physician were recognized experts in

evaluation of medical issues in disability claims; [a]ccordingly, their opinions can be given weight, even greater weight than opinions of treating physicians, when, as here, they are supported by substantial evidence); *Little v. Colvin*, 14-CV-63 (MAD), 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015).  Such reliance is appropriate where the consultant's opinion is supported by other record evidence.  *See Swan v. Astrue*, No. 09-CV-486-S, 2010 WL 3211049, at *5 (W.D.N.Y. August 11, 2010) ("State agency medical consultants are qualified experts in the evaluation of disability claims and as such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In this case, Dr. Harding, a non-examining state medical consultant, reviewed plaintiff's psychiatric records as part of the initial disability determination, and electronically signed his January 25, 2016 opinion that plaintiff's mental impairments did not meet any of the listing criteria. (T. 73-74, 84-85).  Dr. Harding's electronic signature also appears on the final page of the initial determination that plaintiff was not disabled. (T. 80, 91).

In her decision, the ALJ stated that Dr. Harding also prepared an MRFC "in addition" to his analysis of the listing criteria. (T. 17).  However, Dr. Harding's name does not appear on the MRFC statement. (T. 77-79).  Instead, the document shows that it was digitally signed by W. Czarnowski, a Single Decision Maker ("SDM"), on January 22, 2016. (T. 79). In spite of this documentary evidence that the state medical consultant did not prepare the MRFC, the ALJ treated it as Dr. Harding's opinion.

The ALJ's decision admits this discrepancy but provides minimal explanation for

12

the ALJ's interpretation of the document.  In a footnote,  the ALJ wrote that she "observe[d] that the MRFC is signed by a single decision maker.  However, the undersigned finds this to be erroneous.  Dr. Harding tell us to "see MRFC," which indicates that Dr. Harding wrote it.  In addition, the B paragraph analysis comports with the MRFC." (T. 17 n.1).  The ALJ is correct that Dr. Harding's analysis of the listing criteria, dated January 25, 2016, cites the MRFC.  However, the ALJ did not explain why this reference would reasonably suggest that Dr. Harding had also drafted the MRFC that is dated four days earlier and contains another individual's electronic signature.

The question of whether the MRFC was prepared by an SDM, rather than Dr. Harding, has a significant impact on whether or not the ALJ's disability determination was supported by substantial evidence.  "SDMs are non-physician disability examiners who may make the initial disability determination in most cases without requiring the signature of a medical consultant." *Barrett v. Berryhill*, 286 F. Supp. 3d 402, 429 (E.D.N.Y. 2018) (citations and internal quotation marks omitted).  As of May 2010, ALJs have been instructed that "RFC determinations by SDMs should not be afforded any evidentiary weight at the administrative hearing level." *Curtis v. Astrue*, No. 11–CV–786 (GTS/VEB); 2012 WL 6098258, at *6 (N.D.N.Y. Oct. 30, 2012) (citation omitted).  Accordingly, "[a]n SDM assessment is not a medical opinion for the purposes of appeals." *Sylcox v. Colvin*, 2015 WL 5439182, at *12 (S.D.N.Y. Sept. 15, 2015) (citing *Alberalla v. Colvin*, 2014 WL 4199689 at *10 (W.D.N.Y. Aug. 22, 2014), and *Sears v. Astrue*, 2012 WL 1758843 at *6 (D. Vt. May 15, 2012)).  "It is thus legal error

13

to weigh an SDM's opinion as if he or she were a medical professional." *Barrett*, 286 F. Supp. 3d at 429 (citing *Box v. Colvin*, 3 F. Supp. 3d 27, 46 (E.D.N.Y. 2014)); *see also Curtis*, 2012 WL 6098258, at *6 (collecting cases holding that assignment of any evidentiary weight to an SDM's opinion is an error).

As a general rule, the ALJ has a duty to develop the record when an inconsistency or ambiguity arises. 20 C.F.R. §§ 404.1520b; 416.912(e).  Here, the ALJ made little to no inquiry before deciding that Dr. Harding authored the January 22, 2016 MRFC, despite someone else's name appearing on the document.  The ALJ's error is heightened due to the "substantial weight" that she assigned to that MRFC as compared to the other medical opinions in the record, and the resulting impact on the disability determination. Therefore, this court finds that remand is necessary to adequately resolve this ambiguity. *See Andrisani v. Comm'r of Soc. Sec.*, No. 17-CV-433 (HBS), 2019 WL 1292233 at *4 (W.D.N.Y. March 21, 2019) (remanding where court could not determine how much influence SDM's opinion had over ALJ's RFC analysis);*Curtis*, 2012 WL 6098258, at *6 (remanding for ALJ to clarify whether opinion assigned substantial weight was prepared by an SDM or a state medical consultant); *see also Ridley v. Comm'r of Soc. Sec.*, No. 16-CV-1353 (WBC), 2018 WL 799160, at *6 (N.D.N.Y. Feb. 8, 2018) (remanding where it was unclear if the ALJ would have found an ability to perform light work without consideration of the SDM's opinion).

### 2.     Evaluation of Other Medical Opinion Evidence

As part of her RFC determination, the ALJ limited plaintiff to occasional[3] contact

with co-workers and supervisors, but no contact with the general public. (T. 15).  She

also found that plaintiff would likely be off task five percent of the workday. (*Id.*)

Plaintiff contends that these limitations are significantly less restrictive than those

identified in multiple medical opinions in the record, and that the ALJ failed to

adequately explain the basis for deviating from the medical opinion evidence.  This

court agrees.

There were three examining physicians' opinions in the record that addressed

plaintiff's limitations with regard to remaining on task and interacting with others.  On

January 24, 2017, plaintiff's primary treating physician, Dr. Matthew T. Bennett, opined

in a Medical Source Statement that plaintiff would likely miss five or more days of

work per month due to his medical conditions, and could be expected to be off-task

between 10% to 25% of the workday, due to his difficulties with attention and

concentration. (T. 258).  Dr. Bennett also opined that plaintiff had marked limitations in

his ability to "deal with normal work stress," "report to work on time every day," and

extreme limitations in his ability "to work in coordination with others." (T. 260).

Dr. Carlene Ianuzzi, plaintiff's treating psychologist, prepared a medical source

statement on January 30, 2017. (T. 261-63).  Dr. Ianuzzi opined that plaintiff's social

anxiety, depression, and attention deficit disorder would cause him to miss work for five

---

[3] Pursuant to SSA guidance, occasional contact would occur from very little up to one-third of
the time, and would generally total no more than about two hours of an eight hour workday.  *See* SSR
96-9P, 1996 WL 374185 (S.S.A. July 2, 1996)

or more days per month, and to be off-task more than 25% of the time during the workday. (T. 261).  In a letter opinion submitted on November 15, 2017, Dr. Ianuzzi noted that she had seen plaintiff about every two weeks since September 25, 2016. (T. 264).  After summarizing plaintiff's medical history in her letter, Dr. Ianuzzi opined that plaintiff was unable to work in a structured situation, due to his concentration problems and high anxiety levels. (T. 265).  Dr. Ianuzzi also submitted a letter on March 1, 2018, that summarized her opinion of plaintiff's depressed mental state during three visits between December 2017 and February 2018. (T. 317).

Dr. Amanda Slowik, a psychiatric consultative examiner, evaluated plaintiff on January 14, 2016. (T. 245-49).  Based upon this examination, Dr. Slowik opined that plaintiff did not have any limitations in his ability to follow and understand simple directions and instructions. (T. 248).   She also opined that plaintiff had mild limitations in his ability to maintain attention and concentration, and that his ability to maintain a regular schedule, relate adequately with others, and appropriately deal with stress was "moderately to markedly limited." (*Id*.)  She found that these difficulties were "caused by distractability, lack of motivation, depression, and anxiety," and that plaintiff's "psychiatric and stress related problems" may significantly interfere with his ability to function on a daily basis. (*Id.*)

In her decision, the ALJ generally explained her reasons for discounting each of these medical opinions. (T. 18-19).  She assigned "partial weight" to Dr. Bennett's opinion in light of his treatment experience with plaintiff, but discounted his opinion due to the lack of narrative explanation and inconsistencies with the treatment record.

16

(T. 18).  Most significant to this proceeding, the ALJ noted that Dr. Bennett opined on mental limitations, such as plaintiff's ability to interact with other people, that the physician conceded were outside his area of expertise. (T. 18, 260).

The ALJ assigned "little weight" to Dr. Ianuzzi's opinions. (T. 19).  She noted that the psychologist had only treated plaintiff for four months prior to completing the Medical Source Statement, and that Dr. Ianuzzi's subsequent opinion letters included commentary on plaintiff's mental health dating back to 2012, which predated her treatment of plaintiff by several years. (T. 19, 261-65, 317).

The ALJ assigned "significant weight" to Dr. Slowik's opinion in light of its conformity with the consultative examination results and plaintiff's medical history. (T. 18).  The ALJ also found that plaintiff's testimony demonstrated greater functional limitations in the areas of following and understanding instructions, performing simple tasks independently, and maintaining attention and concentration than were reflected in the consultative examiner's opinion. (*Id*.)

Despite the extensive discussion of these opinions in the ALJ's decision, the ALJ never explained how she concluded that plaintiff's impairments would only force him to be off-task five percent of the workday, rather than the more severe limitations described by Dr. Bennett, Dr. Ianuzzi, and Dr. Slowik.[4]  This omission was significant, because the VE testified that an individual off task fifteen percent or more of the

---

[4] The ALJ's determination regarding these functional areas also differed from the contested MRFC discussed in Section VI.B.I.  The MRFC, based solely on a review of the medical records, found moderate limitations in plaintiff's ability to maintain attention and concentration for extended periods, perform activities within a schedule, interact with the general public, get along with co-workers or peers, and accept instructions from supervisors. (T. 88-89).

workday would be unable to maintain stable employment. (T. 65).  That error alone

would merit remand for further administrative proceedings.  *See, e.g., Robert S. v.*

*Comm'r of Soc. Sec*., No. 3:18-CV-357 (ATB), 2019 WL 4463497, at *9-10 (N.D.N.Y.

Sept. 18, 2019) (the uncontradicted medical opinion from multiple treating providers

that plaintiff would be off task more than would be tolerated by employers (according to

the VE), could not be overcome by the ALJ's critique of the opinion evidence unless the

contrary evidence was "overwhelmingly compelling")*; Avers v. Berryhill*,  No.

17-CV-0532SR, 2019 WL 2295398, at *3-4 (W.D.N.Y. May 30, 2019) (given the

opinions of treating and examining doctors that plaintiff would be off task more than

25% of a workday and would be moderately limited in his ability to maintain attention

and concentration, perform activities within a schedule, and maintain regular attendance,

there was no evidence in the record upon which the ALJ could base his determination

that plaintiff would be able to meet the attendance and concentration standards of the

positions identified by the vocational expert); *Rowling v. Colvin*, No. 16-CV-6577, 2018

WL 1151106, at *8 (W.D.N.Y. March 5, 2018) (the vocational expert testified that, if

plaintiff were off task about 20% of the time due to impaired concentration, no jobs

would be available, and the record – which indicated primarily "moderate" limitations in

concentration – did not contain substantial evidence to support the ALJ's conclusion that

Plaintiff was not disabled); *Bruner v. Colvin*, No. 16-CV-6735 (CJS), 2017 WL

4215942, at *3, 5 (W.D.N.Y. Sept. 22, 2017) (based on treating physician's opinion that

plaintiff would be off-task 30% of the workweek, the examining consulting

psychologist's statement that plaintiff "has difficulty with a regular schedule, due to

anxiety," and the non-examining psychologist's statement that plaintiff is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, the court found that the ALJ's determination that plaintiff would not be off task 20% of the time was not supported by substantial evidence in the record).  However, the ALJ compounded her error by failing to explain how she determined that plaintiff could tolerably interact with co-workers and supervisors up to one-third of the workday but not the general public, when the medical opinion evidence in the record made no such distinction regarding plaintiff's limitations in interacting with others.  *See Colosi v. Comm'r of Soc. Sec.,* No. 18-CV-01496 (EAW)*; 2020 WL 548976, at *4 (W.D.N.Y. Jan. 31, 2020) (remanding where ALJ's RFC determination allowed occasional interaction with co-workers, and only medical opinion evidence in the record found no ability to work in coordination or proximity to others).

It is true that an ALJ's decision need not "perfectly correspond with any of the medical sources cited," and that she is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013). Likewise, "it is not per se error for an ALJ to make the RFC determination absent a medical opinion" where "the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Lewis v. Colvin*, No. 13-CV-1072S, 2014 WL 6609637, at *6 (W.D.N.Y. Nov. 20, 2014) (citation omitted).  However, in this case, the ALJ never adequately

explained the substantial evidence that would have supported her conclusions that plaintiff could still manage "occasional" contact with co-workers and supervisors and would only be off-task up to five percent of the workday, when the only relevant medical opinions found more restrictive limitations in these functional areas. *See Wilson v. Comm'r of Soc. Sec.*, No. 1:16-CV-77 (NAM), 2017 WL 1194229, at *4 (N.D.N.Y. March 30, 2017) ("To be clear, the Court is not suggesting that the ALJ is required to assign greater weight to [the examining physician's] opinion on remand, so long as it is clear why the opinion is given the weight it is given, and that the decision is supported by substantial evidence.") Therefore, on remand, the Commissioner should properly address the totality of the medical opinion and other evidence regarding plaintiff's functional limitations, assess and articulate plaintiff's RFC with sufficient specificity, and present the evidence upon which the Commissioner relies to support the RFC determination. If necessary, the Commissioner should order further consultative examinations of plaintiff or use a medical consultant to offer opinions based on the complete medical record.

## VII.   <u>STEP FIVE DETERMINATION</u>

### A.   **Legal Standards**

At step five of the disability analysis, the burden shifts to the ALJ to demonstrate that there is other work in the national economy that plaintiff can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009). If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question that incorporates plaintiff's limitations. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981). Although the

ALJ is initially responsible for determining the claimant's capabilities based on all the evidence (*see Dumas v. Schweiker*, 712 F.2d 1545, 1554 n.4 (2d Cir. 1983)), a hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony.  *See De Leon v. Sec'y of Health and Human Servs.*, 734 F.2d 930, 936 (2d Cir. 1984); *Lugo v. Chater*, 932 F. Supp. 497, 503-04 (S.D.N.Y. 1996).  Conversely, the ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect the plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an RFC analysis supported by substantial facts, the hypothetical is proper.  *Id.* at 276-277.

### B.    Application

The ALJ relied on her erroneous RFC finding in her formulation of hypothetical questions to the VE, and in the step five analysis of whether other jobs existed in the national economy that plaintiff could perform. (T. 21-22, 63-66).  Hence, the ALJ's ultimate determination that plaintiff was not disabled was tainted, and the step five determination must be reconsidered on remand.

## VIII.  <u>NATURE OF REMAND</u>

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard . . . remand to the Secretary for further development of the evidence" is generally appropriate.  *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980). This court cannot conclude that "substantial evidence on the record as a whole indicates

that the [plaintiff] is disabled[,]" and thus, I cannot recommend a remand solely for the determination of benefits.  *See Bush v. Shalala*, 94 F.3d 40, 46 (2d Cir. 1996).

      **WHEREFORE,** based on the findings above, it is hereby

      **ORDERED**, that the decision of the Commissioner is **REVERSED** and this case **REMANDED**, pursuant to sentence four of 42 U.S.C. § 405(g), for a proper evaluation of all of the medical and other evidence, an appropriate determination of plaintiff's residual functional capacity, and other further proceedings, consistent with this Memorandum-Decision and Order, and it is

      **ORDERED**, that the Clerk enter judgment for **PLAINTIFF**.

Dated: May 26, 2020

Andrew T. Baxter
U.S. Magistrate Judge

22